IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MERRYE K. MEADOWS,

              Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CIVIL ACTION FILE NO.

1:09-CV-2656-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her applications for a period of disability, disability insurance benefits, and Supplemental Security Income. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff Merrye K. Meadows filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on June 7, 2005. [Record ("R.") at 71, 74, 134, 382]. Plaintiff alleged that she became disabled on April

30, 2002, due to back problems, heart problems, bleeding disorder, panic attacks, depression, hormonal imbalance, history of stroke, high blood pressure, carpal tunnel syndrome, and kidney problems.  [R. at 134].  After her applications were denied initially and on reconsideration, a hearing was held on January 30, 2009.  [R. at 388-407].  The Administrative Law Judge ("ALJ") issued a decision on March 2, 2009, denying Plaintiff's applications, and the Appeals Council denied Plaintiff's request for review on July 21, 2009.  [R. at 3-16].  Plaintiff filed a complaint in this court on September 16, 2009, seeking judicial review of the final decision.  [Doc. 2].  The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that Plaintiff Merrye Meadows has degenerative disc disease, degenerative joint disease, and lower extremity neuropathy. [R. at 13].  Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 14].  The ALJ found that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  [R. at 15].  As a result, the ALJ

2

found that Plaintiff was capable of performing her past relevant work as a receptionist, customer service representative, and as an administrative assistant.   [R. at 16]. Accordingly, Plaintiff was not under a disability at any time from April 30, 2002, the alleged onset date, through December 31, 2007, the date last insured.  [R. at 16].

The ALJ's decision [R. at 11-16] states the relevant facts of this case as modified herein as follows:

The claimant was seen on February 25, 2002, by a neurologist for complaints of bilateral severe leg pain.  She was assessed with probable neuropathy and restless leg syndrome and prescribed Neurontin.  EMG/nerve conduction studies were ordered. (Exhibit 1F, pp. 179-80).   The results suggested bilateral personal neuropathy/peripheral neuropathy.  (Exhibit 1F, p. 178).

On June 24, 2003, the claimant complained of intermittent pain.  A CT had showed a small urethral stone.  (Exhibit 1F, p. 200).  On June 27, 2003, she had cystoscopy and ureteroscopy, but no stones were noted.  (Exhibit 1F, p. 199).  Imaging dated June 29, 2003, suggested a fibroid uterus, but no other abnormalities.  (Exhibit 1F, p. 172).  The claimant saw her primary care physician on November 21, 2003, and complained of stomach pain.  She was given Ultracet for pain and referred to a specialist.  (Exhibit 1F, p. 112).  On November 24, 2003, the claimant was seen by a

3

surgeon for recurrent abdominal pain.  Laparoscopic cholecystectomy and cholangiogram was scheduled.  (Exhibit 1F, p. 177).

On February 14, 2004, the claimant was seen at the emergency room for abdominal pain accompanied by nausea and vomiting.  She needed a "considerable" amount of intravenous medication to control her pain.  Imaging suggested fluid in the gallbladder fossa.  (Exhibit 1F, pp. 211-18).

The claimant was seen at the emergency room on August 14, 2004, for complaints of nausea, vomiting and abdominal pain.  The claimant believed she had a kidney stone.  Imaging suggested a possible ovarian cyst but showed no evidence of a kidney calculus.  (Exhibit 1F, p. 219-25).

On May 17, 2005, the claimant was seen at the emergency room for abdominal pain.  Imaging showed no evidence of a kidney or bladder stone but did suggest a possible ovarian cyst.  (Exhibit 1F, pp. 226-32).  She returned to the emergency room on June 22, 2005, complaining of chest pain.  However, she left against medical advice during the diagnostic work-up.  (Exhibit 1F, pp. 204-08).

On April 11, 2006, the claimant was seen for a consultative examination with Kris Manlove-Simmons, M.D.  The claimant listed her medical impairments as including residuals from a stroke in 1999, back pain that was the result of a work-

4

related injury and carpal tunnel syndrome. She was sixty-five inches tall and weighed one-hundred seventy-four pounds. The claimant ambulated independently with no assistive device and displayed no limp. On examination, she had slightly decreased strength in the bilateral lower extremities secondary to guarding due to back pain. She had some decrease in light touch sensation in her right hand, left hand, and right groin. She had no problems with balance. The claimant was assessed with chronic lumbar pain, inflammatory polyarthropathy, right cerebrovascular accident, history of bilateral carpal tunnel syndrome, hypertension (stable) and a history of cardiac problems. (Exhibit 1F, pp. 55-60). Imaging of the claimant's spine showed slight narrowing at C5-6 and L3-4. (Exhibit 1F, p. 48).

When seen by her primary care physician on September 20, 2007, the claimant complained of fatigue, back and leg pain, and shoulder pain. Imaging suggested acromioclavicular joint degenerative changes. (Exhibit 1F, pp. 17, 47). Imaging of her back, dated October 4, 2007, suggested a disc herniation at L4-5 with nerve root abutment as well as mild central spinal stenosis at L4-5 and neural foraminal narrowing. (Exhibit 1F, p. 45).

The claimant has complained of depression, and her primary care physician has prescribed Wellbutrin. (Exhibit 1F, pp. 135-39). She has not sought specialized

5

mental health care, nor has she complained of severe symptoms. The claimant testified that she last worked in 2005, several years after the alleged onset date. She has a history of office work. She stopped working because of back pain and stated that she could only take over-the-counter medication for pain. The claimant rated her pain as an "11" out of a possible "10" with "10" being the worst pain imaginable. The claimant testified to depression and stated that she was in a mental institution at the age of fifteen and now is in worse shape than she was then. Despite claims of panic attacks and suicidal ideation, she has sought no psychiatric care.

The claimant stated that she has bilateral carpal tunnel syndrome with no history of surgery. She stated that her teeth are "rotten" and "falling out of her head." She has not sought dental care. She alleged a headache "every day of her life" for five or six years. She stated that she cannot sit still and has leg pain from diabetes. She alleged three strokes with the first occurring at age forty. The claimant spends most of her morning and afternoon sitting on the sofa watching television. She does not do chores. She will drive her daughter to work and can go to the grocery store.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

6

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited. The court's function is to determine: (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner; and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind

7

might accept as adequate to support a conclusion.  See <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work.  If the claimant satisfies her burden of proving disability with respect to her former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy.  See <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five step sequential procedure must be followed when evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order: (1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether the claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5)

whether the claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 30, 2002, through her date last insured of December 31, 2007 (20 C.F.R. 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the severe impairments of degenerative disc disease, degenerative joint disease, and lower extremity neuropathy (20 C.F.R. 404.1521 *et seq.*).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526).

5.    Through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).

6.    Through the date last insured, the claimant was capable of performing past relevant work as a receptionist, a customer service representative, and an administrative assistant.  This work did not require the performance of work-

9

related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7.   The claimant was not under a disability, as defined in the Social Security Act, at any time from April 30, 2002, the alleged onset date, through December 31, 2007, the date last insured (20 C.F.R. 404.1520(f)).

[R. at 11-16].

## V.   Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Merrye Meadows did not engage in substantial gainful activity during the period from her alleged disability onset date of April 30, 2002, through her date last insured of December 31, 2007. [R. at 13]. At the second step, the ALJ determined that the claimant had degenerative disc disease, degenerative joint disease, and lower extremity neuropathy. [R. at 13]. Although these impairments were "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 14]. The ALJ found at the fourth step of the sequential evaluation that the claimant was capable of performing her past relevant work as a receptionist, a customer service representative, and an administrative assistant. [R. at 16]. Therefore, the claimant was not under a disability at any time

from April 30, 2002, the alleged onset date, through December 31, 2007, the date last insured.  [R. at 16].

Plaintiff argues that the ALJ erred when he did not complete a Psychiatric Review Technique Form ("PRTF") despite the presence of a medically determinable mental impairment.  [Doc. 11 at 7-9].  Plaintiff also contends that the ALJ did not make the findings required to determine whether she could return to her past relevant work.  [Id. at 9-11].  Plaintiff's final argument is that the ALJ erred when he did not adequately evaluate whether her carpal tunnel syndrome and syncope were severe impairments. [Id. at 11-13].

A.   **PRTF Findings**

Plaintiff argues that the ALJ was required to make findings set forth in a PRTF because she has a medically determinable mental impairment.  The Eleventh Circuit has stated:

> Agency regulations require the ALJ to use the "special technique" dictated by the PRTF for evaluating mental impairments.  This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas:  "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  The ALJ is required to incorporate the results of this technique into the findings and conclusions.

11

Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1520a).  The court in Moore went on to hold, "[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, and incorporate its mode of analysis into his findings and conclusions."  Id. at 1214.  The issue in the present case is whether Plaintiff presented a colorable claim of mental impairment.

Plaintiff notes that she has been diagnosed with depression and anxiety.  [Doc. 11 at 8; R. at 164, 198].  At the administrative hearing, Plaintiff testified that she has always had depression and was in a mental institution at age fifteen.  [R. at 392].  She also testified that she has experienced memory loss and panic attacks.  [R. at 392, 400]. In addition, treatment notes show that Plaintiff has been taking Wellbutrin[1] at many times from late 2003 through 2004, in the middle of 2006, and through much of 2007 and 2008.  [R. at 149-67, 195-205].

The Eleventh Circuit Court of Appeals has yet to define what constitutes a "colorable claim of mental impairment."  However, courts within the Eleventh Circuit

---

[1]Wellbutrin (also known as bupropion) is a medication used to treat depression, to prevent depression in patients with seasonal affective disorder, and to help people stop smoking.  http://www.mayoclinic.com/health/drug-information/DR600283 (last visited Aug. 31, 2010).

12

that have addressed facts similar to the present case have concluded that no colorable claim has been established.  In <u>Sesberry v. Astrue</u>, 2010 WL 653890, at *3 (M.D. Fla. February 18, 2010), the claimant's medical record included two notations of depression from one of the claimant's treating physicians, who also referred the claimant to a psychiatrist for an evaluation and prescribed an antidepressant.  The court found that "this evidence, without more, does not establish a colorable claim of mental impairment."  <u>Id.</u>, at *5.  Similarly, in <u>Beattie v. Astrue</u>, 2009 WL 4510117 (M.D. Fla. December 1, 2009), which was cited in <u>Sesberry</u>, the court held that isolated hospitalization and treatment for an attempted suicide and a diagnosis of major depressive disorder was insufficient to establish a colorable claim of mental impairment.  And in <u>Kellerman v. Astrue</u>, 2009 WL 3586554 (M.D. Fla. October 28, 2009), the court found that there was no colorable claim of mental impairment when there was only a single record of claimant's depression and an antidepressant was listed as a current medication.

In the present case, treatment notes reveal that Plaintiff Meadows was seen by her primary care physician, Dr. Albert Edwards, approximately sixty times from 2003 through 2008.  [R. at 149-199].  Dr. Edwards prescribed Wellbutrin, and a number of times listed this as one of Plaintiff's many medications.  [<u>Id.</u>].  However, Dr. Edwards

13

only mentioned depression on one occasion in May 2007.  [R. at 164].  He also noted anxiety in the same May 2007 treatment note and in another note dated November 2003.  [R. at 164, 198].  These two notations include no explanation but only list the words "anxiety" and "depression," and they are buried in treatment notes.  They are also separated by almost four years.  [Id.].  Not only is there a paucity of evidence supporting Plaintiff's allegations of mental impairments, but as the ALJ pointed out in his decision, Plaintiff has not sought any mental health treatment even though she alleges suicidal ideation, panic attacks, and crying spells.  [R. at 15-16].  These facts are remarkably similar to the caselaw discussed *supra*, especially Sesberry, 2010 WL 653890, and Kellerman, 2009 WL 3586554, as both of those cases involved one or two notations of depression and the claimants were noted as taking antidepressants.  Given the lack of mental health treatment and the fact that the record contains only two isolated notations of mental impairments, made by Plaintiff's primary care physician, the court finds that Plaintiff has not presented a colorable claim of mental impairment. As a result, the ALJ committed no error when he did not make PRTF findings.

### B.    Plaintiff's Past Relevant Work

The ALJ found at the fourth step of the sequential evaluation that Plaintiff Meadows was capable of performing her past relevant work as a receptionist, a

14

customer service representative, and an administrative assistant.  [R. at 16].  Plaintiff

argues that the ALJ cites no basis for concluding that these jobs meet the Social

Security Administration's definition of substantial gainful activity.  [Doc. 11 at 9].

According to Plaintiff, she provided incomplete information about her earnings, and

it is not possible to determine whether she met the earnings requirement necessary for

her jobs to qualify as substantial gainful activity.  [Doc. 11 at 9].

The relevant Social Security regulation provides that work activity is substantial

if it "involves doing significant physical or mental activities."   20 C.F.R. §

404.1572(a).  The regulation goes on to state, "Your work may be substantial even if

it is done on a part-time basis or if you do less, get paid less, or have less responsibility

than when you worked before."  Id.  Gainful work activity is described as "the kind of

work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. §

404.1572(b).  The regulations also state that a claimant's job is presumed to constitute

substantial gainful activity if it meets a certain level of earnings.  For example, average

earnings of at least $500 per month during the period of January 1990 through June

1999 and at least $700 per month from July 1999 through December 2000 will

ordinarily show that a claimant has engaged in substantial gainful activity.  20 C.F.R.

§ 404.1574(b)(2).  The Commissioner contends that contrary to Plaintiff's arguments,

her work history reveals that her past relevant work as a customer service representative, a receptionist, and an administrative assistant produced sufficient earnings to qualify as substantial gainful activity. [R. at 59, 107-11; Doc. 12 at 12]. The evidence before the court supports the Commissioner's argument.

Records show that Plaintiff worked as a customer service representative from April 1989 through August 1997 earning $10 per hour and working more than 40 hours per week. In the last full year that she worked in this job, Plaintiff earned $16,989, which is more than $1,400 per month. [R. at 59, 107, 112]. Plaintiff worked as a receptionist from October 1997 through May 1999 earning more than $8 per hour and working 40 hours per week. In the last full year she worked in this receptionist position, Plaintiff earned $17,864, which is more than $1,400 per month. [R. at 59, 107, 111]. Plaintiff worked as an administrative assistant from June 1999 through September 2000 and from June 2001 through May 2002. She earned between $10 and $11 per hour and worked 40 or more hours per week. [R. at 59, 107, 109-10]. Plaintiff's average earnings during these time periods were well in excess of $1,000 per month. [Id.]. Thus, as the Commissioner notes, "for each of the jobs that the ALJ found constituted past relevant work, Plaintiff had monthly average earnings above the regulatory guidelines establishing a presumption of SGA." [Doc. 12 at 12]. Given the

evidence in the record, the court finds unpersuasive Plaintiff's argument that the ALJ was not able to determine whether she met the earnings requirement necessary for her jobs to qualify as substantial gainful activity.

Plaintiff next argues that the ALJ failed to obtain detailed information about the demands of her past work as required by Social Security regulations. [Doc. 11 at 10-11]. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work, which involves lifting no more than ten pounds. 20 C.F.R. § 404.1567(a). Based on this finding, the ALJ concluded that Plaintiff was capable of performing her past relevant work. Social Security Ruling ("SSR") 82-62 provides, "Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source." Plaintiff contends that "the ALJ made no inquiries about any of the mental or physical demands of Meadows' past work before finding that she retained the ability to [perform] her past work and provided no authority for his conclusion that Meadows could perform her past work as it is generally performed in the national economy." [Doc. 11 at 10]. The court finds Plaintiff's argument unpersuasive.

17

The record in this case reveals that a description of Plaintiff's work was obtained from Plaintiff, just as the Social Security regulations allow.  See SSR 82-62; 20 C.F.R. § 404.1560(b)(2) ("We will ask you for information about work you have done in the past.").  Plaintiff completed a Work History Report and described the demands and requirements of her various jobs.  [R. at 107-11].  Plaintiff, for example, stated that in her work as an administrative assistant, she made and received phone calls, performed billing operations, typed, filed, and performed other clerical duties.  [R. at 109-10].  She also stated that she sat for five or six hours per day and that she never lifted more than ten pounds.  [Id.].  Plaintiff described her receptionist work as answering the switchboard, operating the security gate, signing in visitors, and performing other clerical duties.  [R. at 111].  She stated that she sat for eight hours per day and never lifted more than ten pounds.  [R. at 111].

Given the descriptions provided by Plaintiff of her past jobs, the undersigned finds that detailed information about the demands of her past work was obtained as required.  Moreover, as the Commissioner correctly notes, "Plaintiff has failed to identify – much less show – which requirements of her past relevant work she is unable to perform.  Accordingly, she has not met her burden to prove that she is disabled."

18

[Doc. 12 at 12-13].  The court finds that substantial evidence supports the ALJ's findings regarding her past relevant work and that no error was committed.

## C.    Severe Impairments

The ALJ found that Plaintiff has severe impairments in the form of degenerative disc disease, degenerative joint disease, and lower extremity neuropathy.  [R. at 13]. Plaintiff argues that the ALJ erred when he did not adequately evaluate whether her carpal tunnel syndrome and syncope[2] were severe impairments.  [Doc. 11 at 11-13]. According to Plaintiff, the ALJ's error was harmful because her treating physician, a consultative examiner, and the state agency consultants all diagnosed her with these impairments.  [Id.; R. at 149, 200-03, 206-13].  Plaintiff also notes that Dr. Ramona Minnis, a state agency consultant, found that her carpal tunnel syndrome resulted in a limited ability to perform fine manipulation (fingering).  [R. at 209].  And in October 2008, Plaintiff complained of fainting spells, and Dr. Edwards indicated a diagnosis of continued syncope.  [R. at 149].

Plaintiff contends that her carpal tunnel syndrome caused manipulative limitations and that the ALJ failed to consider this impairment.  [Doc. 11 at 12-13].

---

[2]Syncope is another term for fainting or temporarily losing consciousness. http://www.medicinenet.com/fainting/article.htm (last visited Sept. 1, 2010).

Plaintiff points out that Social Security regulations require the ALJ to "consider the medical severity of your impairment(s)," 20 C.F.R. § 404.1520(a)(4)(ii), and "the combined effect of all of your impairments," 20 C.F.R. § 404.1523. [Doc. 11 at 12]. The court finds, however, that the ALJ not only stated in his decision that he considered the entire record, but he specifically discussed the evidence of Plaintiff's carpal tunnel syndrome.  The ALJ, for example, noted that a consultative examiner, Dr. Kris Manlove-Simmons, found that Plaintiff had "some decrease in light touch sensation" in her right and left hands and that she assessed Plaintiff with a "history of bilateral carpal tunnel syndrome." [R. at 13, 14, 200-03].  The ALJ also noted that Plaintiff "stated that she has bilateral carpal tunnel syndrome with no history of surgery." [R. at 15].  In light of these statements, it is apparent that the ALJ considered Plaintiff's carpal tunnel syndrome.

The ALJ did not offer an extensive discussion of Plaintiff's alleged limitations caused by her carpal tunnel syndrome.  However, the ALJ did explain that Plaintiff's allegations of the limiting effects caused by all of her symptoms were not credible to the extent they were inconsistent with his RFC assessment.  The ALJ stated that he based this finding on *inter alia* Plaintiff's tendency "to magnify her symptoms, such

as rating her pain as an '11' out of '10'."[3]  [R. at 14-16].  The court finds that the ALJ

adequately explained why he found Plaintiff's allegations of the extensive nature of

her limitations to be not credible and that he cited evidence in support thereof.

Moreover, as the Eleventh Circuit has held, "there is no rigid requirement that the ALJ

specifically refer to every piece of evidence in his decision."  Dyer v. Barnhart, 395

F.3d 1206, 1211 (11th Cir. 2005).

Even assuming *arguendo* that the ALJ erred in not adequately discussing his

evaluation of Plaintiff's carpal tunnel syndrome, the court finds that the error is

harmless given the lack of evidence showing that this impairment resulted in

significant limitations.  As noted *supra*, Dr. Minnis, a state agency consultant, found

that Plaintiff had some limitations in her ability to perform fingering.  [R. at 209].  Dr.

Minnis, however, also found that Plaintiff could lift fifty pounds occasionally and

twenty-five pounds frequently, stand or walk for about six hours in an eight-hour

workday, occasionally climb ladders, ropes, and scaffolds, and frequently balance,

stoop, kneel, crouch, crawl, and climb ramps and stairs.  [R. at 207-09].  In addition,

Dr. Minnis found that Plaintiff was unlimited in her ability to push/pull, reach, and

---

[3]The ALJ also noted Plaintiff's allegations that she has headaches "every day of
[her] life" and "rotting" teeth that are falling "out of [her] head," although she has not
sought dental care.  [R. at 15].

handle.  [R. at 206-13].  Thus, while Dr. Minnis found that Plaintiff would experience some limitations as a result of her carpal tunnel syndrome, this consultant also made findings that were far less restrictive than the ALJ's finding that Plaintiff could only perform sedentary work.  [R. at 15].  Similarly, consultative examiner Dr. Manlove-Simmons identified a "history of bilateral carpal tunnel syndrome," but she also found that Plaintiff had a full range of motion of all joints except for the second digit of her left hand and normal (5/5) strength in her upper extremities.  [R. at 202].

The evidence in the record shows that the Plaintiff's carpal tunnel syndrome did not result in significant limitations.  And as the Commissioner states, "[N]o doctor – whether treating, examining, or reviewing – opined that she had functional limitations greater than those found by the ALJ."  [Doc. 12 at 17].  Given these facts, the court concludes that Plaintiff has failed to show that the ALJ erred when he did not find her carpal tunnel syndrome to be a severe impairment.

With respect to Plaintiff's syncope, the Commissioner points out that this impairment was first diagnosed in October 2008, many months after her insured status had expired on December 31, 2007.  [Doc. 12 at 16; R. at 149].  At the administrative hearing in January 2009, Plaintiff testified that she had been experiencing fainting spells for six or seven months.  [R. at 393-94].  This evidence reveals that Plaintiff's

symptoms began in the middle of 2008, long after her date last insured.  Plaintiff has offered no evidence that she had this impairment during the relevant period. Moreover, there is no evidence that Dr. Edwards, the physician who diagnosed Plaintiff with syncope, found that this alleged impairment caused any functional limitations.  [R. at 149].  The undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff's syncope was not a severe impairment.

## VI.   Conclusion

For all the foregoing reasons and cited authority, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards.   It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.  See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

**SO ORDERED**, this 7th day of September, 2010.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

23